IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY BOWLING,

    Plaintiff,

v.

ENGINETICS CORPORATION, *et al.*,

    Defendants.

Case No. 3:17-cv-200

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #22); JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

After being terminated from his job as a laser technician, Plaintiff Timothy Bowling filed suit against his former employer, Enginetics Corporation, his supervisor Michael Byron, and Human Resources Manager Linda Wright-Manuel. Bowling alleged claims of age discrimination and wrongful termination under federal and state law and a claim of intentional infliction of emotional distress. He sought injunctive relief, reinstatement and money damages. Defendants maintain that Bowling was terminated for excessive absenteeism.

This matter is currently before the Court on Defendants' Motion for Summary Judgment, Doc. #22.[1] For the reasons set forth below, the Court sustains that motion.

I.  Background and Procedural History

Enginetics is a company that makes aircraft engine parts. Timothy Bowling began working there in 2005, when he was 42 or 43 years old. In March of 2012, the company, which was then under new management, instituted an Attendance and Punctuality Policy (the "Policy"). Doc. #20-4, PageID##280-82. As explained by Human Resources manager Linda Wright-Manuel, the Policy was created to ensure a fair and uniform process for disciplining hourly employees for attendance violations. Doc. #21, PageID##470-71.

The Policy provided a system of progressive discipline. Employees accumulated "occurrence points" each time they were tardy or had an unexcused absence. They were given written warnings when they reached 10 and 12 occurrence points. They were given a written warning and suspended for 3 days without pay when they reached 14 occurrence points. An employee who accumulated 16 occurrence points within a calendar year would be terminated. *Id.* at PageID##454-55, 484; Doc. #20-4, PageID#280.

---

[1] All claims against Michael Byron have already been dismissed with prejudice. Doc. #23.

Attendance tracking was tied directly to the payroll system, which was administered by ADP. Hourly employees used a badge to clock in and out each workday. Based on those time clock records, ADP would provide Enginetics' finance department with a weekly report, listing employees who had reached certain occurrence point levels under the Policy. Wright-Manuel would then issue warnings to those employees or take other disciplinary action against them. Doc. #21, PageID##454-55. She did not audit any of the information contained in the ADP report for accuracy. *Id.* at PageID#474. She explained that she had no reason to do so because the ADP report was directly tied to the employee's time clock records. *Id.* at PageID#496.

Bowling received a copy of the Policy and was trained on it. Doc. #20, PageID#141; Doc. #20-5, PageID#306. In 2015, Bowling received occurrence points on the following dates, for the following reasons:

- 2/13/15    1 point     Left early
- 2/15/15    2 points    Unexcused absence
- 2/20/15    2 points    Unexcused absence
- 6/22/15    2 points    Unexcused absence
- 6/25/15    1 point     Tardy
- 6/27/15    1 point     Unscheduled vacation
- 6/28/15    1 point     Tardy
- 7/5/15     2 points    Unexcused absence
- 7/11/15    1 point     Tardy
- 7/17/15    1 point     Tardy
- 11/16/15   2 points    Unexcused absence

3

Doc. #21-3, PageID##513-15. He was terminated on November 30, 2015, at age 53, allegedly for having reached 16 occurrence points. Doc. #21, PageID#482. Bowling maintains that this was a pretext for age discrimination.

On June 16, 2017, Bowling filed suit, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and Ohio Revised Code §§ 4112.02 and 4112.99. He also brought wrongful termination claims based on federal and state law, and a claim of intentional infliction of emotional distress.

Defendants have moved for summary judgment on all claims. They maintain that Bowling was terminated only because he exceeded the maximum number of unexcused absences and late arrivals allowable under the Policy. Doc. #21, PageID#471. Defendants deny that Bowling's age had anything to do with his termination.

## II. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a

genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must

assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Analysis

Bowling asserts five causes of action in his Complaint: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; (2) wrongful termination based on age discrimination in violation of the ADEA; (3) age discrimination in violation of Ohio Revised Code §§ 4112.02 and 4112.99; (4) wrongful termination based on age discrimination in violation of Ohio Revised Code §§ 4112.02 and 4112.99; and (5) intentional infliction of emotional distress.

6

### A. Federal Claims

The Court turns first to the federal claims.

#### 1. ADEA

Count I of Bowling's Complaint alleges a violation of the Age Discrimination in Employment Act ("ADEA"). The ADEA makes it unlawful for an employer "(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has interpreted this language to require a plaintiff's age to be the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-78 (2009). The ADEA protects individuals forty years of age and older. 29 U.S.C. § 631(a).

In an employment discrimination case, a plaintiff may withstand summary judgment in one of two ways. First, the plaintiff may present direct evidence of discrimination. Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination motivated the adverse employment action. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). For example, a facially discriminatory employment policy or an express statement by a decision-maker of a desire to terminate an employee because he is a member of a protected class would constitute direct evidence of discrimination. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Bowling has presented no direct evidence of age discrimination. Although he testified that Enginetics' new CEO repeatedly talked about wanting to bring in "newer, fresher faces," Bowling admits that he said nothing about age. Doc. #20, PageID#109. He also admits that no other manager expressed a preference for hiring younger workers. *Id.* at PageID#110.

Where, as here, the plaintiff has no direct evidence of age discrimination, he may withstand summary judgment by presenting sufficient circumstantial evidence from which a reasonable jury could infer a discriminatory motive. In such cases, the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 587-88 (6th Cir. 2009). First, the plaintiff must establish a prima facie case of age discrimination. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff must then prove, by a preponderance of the evidence, that the reason given is a pretext for discrimination. *See Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 704 (6th Cir. 2016) (explaining the burden-shifting analysis).

### a. Prima Facie Case

To establish a prima facie case of age discrimination, Bowling must demonstrate that: (1) he is a member of a protected class; (2) he was discharged; (3) he was qualified for his position; and (4) he was replaced by someone outside the protected class. *Richardson*, 836 F.3d at 704. There is no dispute that Bowling, age 53, was a member of a protected class and was terminated from his

position, for which he was qualified. He maintains that he was replaced by Todd Altman, who was approximately 35 years old. Doc. #20, PageID#122. Defendants do not dispute this. *See* Doc. #27, PageID#602.

Accordingly, the Court finds that Bowling has established a prima facie case of age discrimination.

### b. Legitimate, Non-Discriminatory Reason

The burden then shifts to Defendants to proffer a legitimate, non-discriminatory reason for terminating Bowling's employment. Defendants maintain that Bowling was terminated because he amassed 16 occurrence points for attendance violations in 2015. Doc. #21, PageID##471, 495.

### c. Pretext

To rebut this proffered reason for termination, Bowling must show, by a preponderance of the evidence, that it: (1) has no basis in fact; (2) did not actually motivate his termination; or (3) was insufficient to warrant his termination. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011). Bowling attempts to establish pretext through the first two methods.

First, Bowling argues that the proffered reason has no basis in fact because he did not actually accumulate 16 occurrence points in 2015. He challenges the six points that were assessed for absences on February 15, June 22 and November 16. Bowling maintains that his February 15, 2015, absence should not have been counted as an unexcused absence because he provided a doctor's note

for that date. It appears that the note was faxed to Linda Wright-Manuel on February 16, 2015. Doc. #21-4, PageID#524.

At her deposition, Linda Wright-Manuel could not remember why the February 15th absence had been designated as unexcused. She explained that, typically, when an employee presented a doctor's note, she would approve the absence and give the note to payroll manager Peg Huelsman. The points that had been assessed would then be "taken out of the system." Doc. #21, PageID##474-79, 499-500. Wright-Manuel admitted that, had these two points not been assessed, Bowling would not have been terminated. *Id.* at PageID#490.

Bowling also challenges the points that were assessed for unexcused absences on Monday, June 22, 2015, and Monday, November 16, 2015. Bowling maintains that these points were improperly assessed because he did not work on Mondays. He worked only Fridays, Saturdays and Sundays. Doc. #20, PageID##189-190. Defendants note, however, that Bowling has presented no evidence that he was not scheduled to work on the two Mondays in question.[2]

Citing the "honest belief" rule, Defendants argue that, regardless of whether Bowling was improperly assessed points for his February 15, June 22 and November 16 absences, summary judgment on the question of pretext is still

---

[2] The Court also notes that the dates listed in the Attendance Incident Reports are in a column labeled "Processed through." *See e.g.,* Doc. #21-3, PageID#514. Accordingly, even though June 22 and November 16 are the dates listed on the Attendance Incident Report, it does not appear that this necessarily means that the actual absences occurred on those dates.

10

warranted. If Defendants terminated Bowling based on an honestly-held belief that he had accumulated 16 occurrence points, summary judgment is justified even if that conclusion is later shown to be mistaken. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590-91 (6th Cir. 2014). The key inquiry is "whether the employer made a reasonably informed and considered decision." *Id.* at 591.

If an employer invokes the honest-belief rule, the plaintiff "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Richardson*, 836 F.3d at 706 (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012)).

Bowling has not satisfied this burden. In fact, he does not address the honest-belief rule at all. He points to no evidence that would support a finding that Defendants did not honestly believe that he had accumulated 16 points as of November 16, 2015. As Wright-Manuel testified, she did not audit the ADP reports and, because they were directly tied to the employee's time clock records, she had no reason to do so. Bowling has not alleged that she did not reasonably rely on the ADP reports.

Moreover, it does not appear that Bowling did anything to call these three alleged errors to Defendants' attention. Wright-Manuel testified that Bowling did not notify her that the February 15 absence should have been excused. Doc. #21, PageID#504. In addition, Bowling did not challenge the assessment of points for his February 15 or June 22 absences even though he had the opportunity to object

when he signed the written warnings in March and in July. *See* Doc. #20-24, PageID#424; Doc. #20-25, PageID#425.

The Court concludes that Defendants are entitled to the protection of the honest-belief rule.

In a second attempt to establish pretext, Bowling argues that the reason proffered for his termination did not actually motivate Defendants' decision. He argues that, even assuming that he had accumulated 16 occurrence points, the circumstances surrounding his termination raise genuine issues of material fact concerning pretext. He cites to Defendants' irregularities in enforcing the Policy as it applied to him. As previously noted, the Policy provides that written warnings are triggered by the assessment of the 10th and 12th occurrence points. The 14th occurrence point triggers a third written warning and a 3-day suspension without pay. The 16th occurrence point triggers the employee's termination. Doc. #20-4, PageID#280.

The Court agrees that Defendants deviated from their own Policy. The evidence shows that Bowling was given an "Employee Awareness Report," dated February 23, 2015. It notified Bowling that he had accumulated "5 or more points." This document was signed by Bowling and his supervisor on March 8, 2015. Doc. #20-24, PageID#424. On July 21, 2015, Bowling was given a "first written warning at 12 or more points." It was signed by Bowling and his supervisor on August 2, 2015. Doc. #20-25, PageID#425. Wright-Manuel

testified that this encompassed the written warnings for both the 10-point and 12-point triggers. Doc. #21, PageID#482-84.

There is no evidence that Bowling received *any* written warnings after July 21, 2015. In fact, although he had allegedly accumulated 14 occurrence points by July 17, 2015, there is no evidence that Defendants provided any written warning or imposed a 3-day suspension without pay. Wright-Manuel could not explain why this did not happen. Doc. #21, PageID##487-88. She testified that, even if Bowling did not receive a written warning, he always had access to his point total through his ADP account. In the alternative, he could have requested that Defendants run a report for him. *Id.* at PageID#483.

On November 16, Bowling allegedly accumulated the last two points that triggered his termination. Nevertheless, he was not notified of his termination until November 30, 2015, after he returned to work after the Thanksgiving holiday. Wright-Manuel told him that he had exceeded his point limit under the Policy and was being terminated. Doc. #21, PageID##492, 495.

Although Defendants' failure to fully comply with its own Policy is problematic, Bowling has failed to explain how it raises any suggestion of pretext. Defendants note that between January 1, 2014, and March 31, 2016, Enginetics terminated 13 employees who had accumulated 16 occurrence points under the Policy. Only 3 of those 13 employees were over the age of 40. Doc. #20-7, PageID#428.

13

Bowling has presented sufficient evidence from which a reasonable jury could easily find that Defendants' attendance policy was poorly administered and that Defendants' errors unfairly resulted in his termination. Nevertheless, based on the evidence presented, no reasonable jury could find that the proffered reason for Bowling's termination was pretextual. The evidence is simply insufficient to support any inference that Bowling's age was the but-for cause of his termination. Bowling maintains that, after the new CEO took over, several older employees were slowly weeded out and were replaced by younger employees. He speculates that this was done to save money. However, he admits that he has no evidence to support his claim that he was terminated because of this or because of his age. Doc. #20, PageID##115, 218-20.

Accordingly, the Court SUSTAINS Defendants' Motion for Summary Judgment on Count I of the Complaint.

### 2. Wrongful Termination

In Count II of the Complaint, Bowling asserts a claim of "Wrongful Termination Based on Age Discrimination in Violation of 29 U.S.C. § 621 *et seq.*" The factual allegations of this federal common law claim are, for all practical purposes, duplicative of those in Count I. Because the Court has dismissed Bowling's ADEA claim, summary judgment is warranted on the public policy claim as well. *See Hausler v. Gen. Elec. Co.*, 134 F. App'x 890, 895 (6th Cir. 2005) ("Public policy claims necessarily fail where the underlying statutory claims fail."); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375 (6th Cir. 1999) (noting that

the success of a public policy claim is contingent on the success of the ADEA claim).

For this reason, the Court SUSTAINS Defendants' Motion for Summary Judgment on Count II, the federal common law wrongful termination claim.

### B. State Law Claims

Because the Court has dismissed both of the federal claims, it declines to exercise supplemental jurisdiction over Bowling's state law claims of age discrimination, wrongful termination and intentional infliction of emotional distress. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that if federal claims are dismissed before trial, the state claims should be dismissed as well); 28 U.S.C. §1367(c)(3) (providing that district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). The Court therefore dismisses these three state-law claims without prejudice to refiling in a state court of competent jurisdiction.

### IV. Conclusion

For the reasons set forth above, the Court SUSTAINS IN PART Defendants' Motion for Summary Judgment, Doc. #22. Counts I and II of Plaintiff's Complaint, the federal claims, are DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, Counts III through V, and DISMISSES them WITHOUT PREJUDICE to refiling in a state court of competent jurisdiction.

Judgment shall enter in favor of Defendants and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: November 15, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE